(58 App. Div. 45.)

## In re BARRETT.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

EXECUTORS—LIABILITY FOR PROPERTY—DELAY IN OBJECTIONS.

Where testator's widow, for whom no provision was made in the will, took possession of his livery business, and carried it on, and from it supported herself and her infant children, who were the beneficiaries under the will, and after the children were of age the executor sold the property, and at their request paid the proceeds to the widow, the executrix, who never received any of the property, and had nothing to do with its disposition, cannot be held accountable therefor on objection of the children, made eight years after the proceeds had been given the widow.

Appeal from surrogate's court, New York county.

In the matter of the judicial settlement of the account of Mary E. Barrett, executrix of Thomas Dugan, deceased. From the decree settling the accounts, the executrix appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

George Morehead, for appellant.

Benjamin F. Edsall, for respondents.

INGRAHAM, J. The testator died in the year 1883, leaving a last will and testament, appointing the appellant executrix and Thomas Barrett executor, which was admitted to probate on the 14th of June, 1883. On the 29th of June, 1896, the appellant presented her accounts as executrix, asking that they be judicially settled. The respondents, who were the legatees in the will, presented objections to such accounts, and the surrogate sustained such objections, and surcharged the accounts of the executrix with the sum of $1,600 as the fair value of the decedent's property at the time of his death, and directed a distribution of that sum among the legatees in the will; and from that decree the executrix appeals.

The surrogate found that at the time of his death the decedent was the owner of a small livery business in the city of New York. Immediately after the death of the deceased, his widow, for whom no provision was made in the will, took possession of this livery business, and carried it on for her own benefit, and from it supported herself and her two children, who were infants. The widow had inherited from her father the sum of $1,000, which she used to carry on this business; and Thomas Barrett, one of the executors, who was the husband of the appellant, loaned the sum of $1,100 to purchase property and to pay the debts of the decedent relating to the business. In 1888 this business was sold for $3,500, on which $1,000 was repaid to Ann Dugan, the widow, for the money loaned by her; $1,100 was retained by the executor for the money loaned by him; and the balance—about $115—was, at the request of the children and legatees under the will, paid to their mother, the widow of the decedent. The executor, Thomas Barrett, who seems to have made the sale and distributed the proceeds, died in the year 1893.

It is quite clear from the testimony that the contestants were con-

sulted about the sale of the business, had full knowledge of the disposition of the proceeds thereof, and assented to the disposition made of such proceeds; and, as found by the surrogate, the balance, after the payment of the moneys advanced by the widow and Thomas Barrett, was, at the request of the children, paid to the widow. The estate was thus finally closed up with the consent of all the legatees who were entitled thereto. No objection was then made to the sale of the business and the disposition of the proceeds of the sale by the executor who had managed the property. The parties interested in the estate, and who would have been entitled to receive the proceeds of this property if administered by the executor and executrix, having received for years the benefit of the conduct of the business, and being of age, had consented to the disposition that the executor had made of the estate, had joined in the voluntary accounting, by the executor who had made the sale, of the proceeds of such property, by which the executor had made a final disposition of the estate. There was no evidence to show that as a fact the executrix, who now presents her accounts for approval, ever received any portion of this property, or ever interfered with the disposition of the proceeds of the sale of the property. She was a daughter of the deceased, and was made, with her husband, the executrix of the estate. The most that can be said is that she did not object to the family arrangement that was made, by which this small business was turned over to the testator's widow to be used as a means for supporting his family, including all his infant children. None of the property of the estate ever came directly into her hands; and when, after the children arrived of age, there was a practical winding up of the business, and a distribution of the proceeds, this executrix took no part therein, received none of the proceeds, did nothing except that she failed to object to the family arrangement assented to by all of those interested in the estate by which her co-executor finally disposed of the money that came into his hands. After this practical settlement of the estate, these contestants took no steps to repudiate it for eight years, and until after the executor was dead, when this proceeding was commenced. Upon these facts, as found by the referee, it is a little difficult to see upon what theory the learned surrogate charged this surviving executrix with the value of the business of the decedent. The question is not whether the executrix, who received the proceeds of the sale of the property, and distributed them, should be made liable for such proceeds as she has distributed in a manner not authorized by the will, but whether this executrix, who herself was a daughter of the testator, and entitled to share in the estate under the will, should be held responsible for property which never came into her hands, and over which she had no control, and in the disposition of which these contestants acquiesced. There is no evidence to show that the appellant had actual possession of the property, and the surrogate expressly found that, "beginning shortly after the decedent's death, the livery stable business was carried on in the name of Ann Dugan, the decedent's widow. She, with the contestant Kate Tatnall, and Mr. and Mrs. Barrett, appear to have participated in its

management. Mrs. Barrett, however, participated only slightly. The business was thus conducted under this arrangement from 1883 to 1888, when, the contestants having married, it was sold for $3,500." Under these circumstances it certainly cannot be said that this execùtrix was responsible for the act of her co-executor, or for the action of the other members of the family or the widow in taking possession of the property and managing it as they did. In determining the liability of this executrix, we must consider the situation that existed at the time of the decedent's death. He had carried on this livery business, from the proceeds of which he had supported his family. Upon his death the widow assumed the possession of the business, and continued to carry it on, with the assistance of her daughters, for the support of those who were entitled under the will to the property; and by this means the widow was enabled to provide for the support of her children until they arrived of age. This was an irregular method of dealing with an estate, but it was a practical way of providing for the support of the children, was acquiesced in by all, including the respondents, both before and after they became of age, and was finally ratified by their acquiescence in the sale of the property and the distribution of the proceeds. If the contestants had wished to object to this disposition of the estate, they were bound to do so at the time the proceeds were divided, or within a reasonable time thereafter; and it was too late, after eight years, and after the executor who had divided the property was dead, for them then to charge the executrix.

It follows that the decree of the surrogate should be reversed, and a decree entered passing the accounts of the executrix as presented, with costs to the appellant to be paid by the respondents. All concur.